[Civ. No. 6921. First Appellate District, Division One.—May 9, 1930.]

THOMAS CARRICK et al., Respondents, v. W. A. SHERMAN et al., as Board of Fire Commissioners, etc., Appellants.

John J. O'Toole, City Attorney, and Thomas P. Slevin, Assistant City Attorney, for Appellants.

Melvin & Sullivan, William J. DeMartini and Gregory, Hunt & Melvin for Respondents.

McKENZIE, J., *pro tem.*—This is an appeal from a judgment of mandate ordering the defendants to desist from deducting from the pay-roll furnished the city auditor any portion of petitioners' wages, which deductions are retained by the city for the purpose of maintaining San Francisco City Employees' Retirement System, which was established by ordinance in 1922. The ordinance provides that all employees of the city, with certain exceptions, must belong to this protective system. Included within one of the exceptions are firemen who are entitled to the benefits of firemen's relief and pension fund, and petitioners claim to belong to this class. Besides the retirement system created by the ordinance, there are pension systems applicable to the police department, the fire department, etc. These pension systems were established long prior to the enactment of the ordinance in question. The retirement system is financially supported by deducting a certain percentage from each member's

salary, and the pension system is supported by public revenue and also the benefits are probably greater. Consequently it is more advantageous for a city employee or officer to be included within the pension system, and this is what petitioners are endeavoring to do in this action. They belong to the fire department and have been members thereof for many years. There is just one question involved in this case and that is: Were the petitioners entitled to the benefits of the Firemen's Pension System under the provisions of the San Francisco charter of 1899 (Stats. 1899, p. 241), before said charter was amended in 1911 (Stats. 1911, p. 1661)? Said amendments became operative on February 23, 1911, the day they were filed with the Secretary of State.

Article IX of the 1899 charter makes full provision for the organization of the fire department of the city, and the management and control is vested in a board of fire commissioners. Chapter II of this article provides: "The board of fire commissioners shall immediately after their appointment and qualification proceed to reorganize the fire department in conformity with the provisions of this charter. In so doing the board shall make its appointments of officers and members from the persons constituting the force in the service of the fire department at the time this charter goes into effect. Such officers and members shall not be required to pass any civil service examination. All future appointments and promotions shall be made subject to the provisions of article XIII of this charter."

Article XIII provides that all appointments to the fire department must be made through and by the methods provided by the Civil Service Commission. Section 11 of this article provides: "All officers, courts, boards and heads of departments vested in this charter with the power to appoint deputies, clerks, stenographers or employees in any of the offices or departments of the city and county mentioned in this section shall make such appointments in conformity with the rules and provisions prescribed by this article, and any appointment not so made shall be *void.*"

Chapter VII of article IX makes provision for a firemen's relief and pension fund. Throughout this chapter the beneficiaries are referred to as firemen and nothing is stated about permanent or temporary employees.

Section 6, chapter I, article IX, by amendment effective February 23, 1911, provided that engineers and pilots of fireboats, engineers, mechanics and employees of the auxiliary fire system or of the corporation yard, and clerks in the office of the commission shall not be subject to nor derive any benefits from the firemen's relief and pension fund as provided for in chapter VII of article IX.

The board of fire commissioners appointed the petitioners to their respective positions at the times and for duties as follows: Carrick, engineer of fireboat, November 4, 1909; Ward, engineer of fireboat, January 6, 1910; Trapp, pilot of fireboat, December 23, 1910, and Daly, engineer of fireboat, January 30, 1911. As shown by the minutes of the board of fire commissioners, the appointments were all designated as temporary, and those temporary appointments to the same respective duties were renewed as temporary appointments at intervals until January 24, 1913, when the Civil Service Commission, having certified the petitioners as eligible, they were permanently appointed to their respective positions, which they now and ever since have held.

■ If the status of petitioners as firemen is to be determined as of date of their permanent appointment, they are not entitled to the relief they seek because the charter amendment of 1911 specifically excludes them from deriving any benefits from the firemen's relief and pension fund. If they are to have the relief sought, it must be on one of two theories, first, that a temporary employee, before the amendment to the charter, was entitled to this benefit; or, second, that the original appointments, although designated temporary, were in fact permanent.

■ Before discussing these two propositions we will consider a principle of law which respondent stresses and this is that relief and pension systems for firemen are to be liberally construed for the benefit of firemen. For firemen and policemen, who in the course of their duties are constantly exposed to injury and death, it is no advantage to have included within the pension system a number of men who are not exposed to danger. In fact, it is a disadvantage, because the funds to support the system come from the public treasury and if only the deserving reap the benefits, the public can be more generous with its appropriations. An engineer on a fireboat in San Francisco Bay is no more ex-

posed to hazard than hundreds of other ordinary city employees. By the foregoing we are not decrying the highly technical and honorable pursuits of petitioners: we only have in mind that the equities are not all on one side.

Article XIII of the charter, which provides that all permanent positions must be filled through civil service and in the manner prescribed in article XIII, contains this qualifying proviso: "To prevent the stoppage of public business, or to meet extraordinary exigencies, the head of any department or office may, with the approval of the commissioners, make temporary appointments, to remain in force not exceeding sixty days, and only until regular appointments, under the provisions of this article can be made."

■ At the time petitioners Carrick and Ward were temporarily appointed the fire commissioners were creating a new department which required permanent employees to fill permanent positions newly created, and why those positions were temporarily filled by the same men month after month is not revealed. In fact, the action of the fire commission in renewing these temporary appointments would seem to indicate, so far as the record shows, that the civil service law was being ignored. However, if this be so, it will avail the petitioners nothing because such appointments would be void. (San Francisco Charter 1899, art. XIII, sec. 11.) "When the word void is used in a statute that has some object of public policy in view which requires the strict construction the word receives its natural full force and effect." (Maxw., Interp. St., 2d ed., 256; *Reams* v. *Cooley,* 171 Cal. 150 [Ann. Cas. 1917A, p. 1260].)

Under the ruling in *Hurley* v. *Sykes,* 69 Cal. App. 310 [231 Pac. 748, 751], petitioners before the amendment of the charter in 1911 would have been entitled to the benefits of the firemen's pension and relief fund if they had been lawful and permanent employees. But being only temporary employees, were they so entitled? The decision in this case must rest on the answer to this question. In determining this question we must differentiate between a temporary appointment and the six months' probationary period that civil service appointees must serve before the appointment becomes final. Counsel have not directed our attention to any authority where this precise question has been determined nor have we found any in our limited research. How-

ever, in *Hurley* v. *Sykes, supra,* this statement is made: "The terms employed would not, of course, embrace persons hired for a transient or temporary task. The term 'member' embraces the idea of tenure, duration, emoluments and duties." On this statement appellants rely for a reversal. In *State, etc.,* v. *Trustees Firemen's Pension Fund,* 18 Ohio C. C. 887, it was held that a substitute fireman who was injured while on duty as such substitute was not entitled to the benefits of the relief and pension fund.

■ Having in mind that the board of fire commissioners, outside of civil service appointments, had only power to make temporary appointments, we are compelled to hold that petitioners were not such members of the fire department as were entitled to the benefits of the relief and pension fund prior to the amendment of the charter in 1911. It thus follows that the trial court, on the evidence adduced at the trial, was not justified in finding that petitioners were, prior to the charter amendment of 1911, members of the fire department and entitled to the advantages of the firemen's relief fund. ■ The presumption "That a person acting in a public office was regularly appointed to it" is not applicable to one seeking to recover the salary attached to the office. (*Burke* v. *Edgar,* 67 Cal. 182 [7 Pac. 488].) The same rule should apply when the benefits of a pension system are being sought. The burden was upon petitioners to establish their claim. This they did not do. However, on a new trial they may be able to show some further action by the civil service commissioners that would change the situation, and, likewise, there might be some rule established by the pension commissioners relating to temporary appointments, which was overlooked at the trial, that would bring comfort to petitioners.

The judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.